**Joseph McCULLOUGH, et ux.,**

v.

**JOHNSON CITY EMERGENCY PHYSICIANS, P.C., et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Nov. 15, 2002 Session.

Dec. 19, 2002.

Permission to Appeal Denied by Supreme Court May 27, 2003.

**38**

David C. Lee, J.D. Lee, Knoxville, Tennessee, for the Appellants, Joseph McCullough, et. ux.

Jimmie C. Miller, Nancy C. Eastridge, Kingsport, Tennessee, for the Appellees, Johnson City Emergency Physicians, P.C. and Linda Monteith, M.D.

Jeffrey M. Ward, Greeneville, Tennessee, for the Appellee, Cardiology Consultants of Johnson City, P.C.

Charles T. Herndon, IV, Johnson City, Tennessee, for the Appellees, Brett Wyche, M.D. and Wyche and Wyche, M.D., P.C.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

## OPINION

Joseph McCullough ("Mr.McCullough") suffered an acute anterior myocardial infarction on September 1, 1997. He was treated in the hospital by Albert R. Blacky, M.D. ("Dr.Blacky") of Cardiology Consultants of Johnson City, P.C. ("Cardi-ology Consultants") and placed on anti-coagulation therapy. Later the same month, Mr. McCullough was treated by Linda Monteith, M.D. ("Dr.Monteith") of Johnson City Emergency Physicians, P.C. ("Johnson City Emergency Physicians") and Brett Wyche, M.D. ("Dr.Wyche") of Wyche and Wyche, M.D., P.C. ("Wyche & Wyche"), for various complaints. Around September 27, 1997, Mr. McCullough suffered a massive cerebellar hemorrhage resulting in permanent impairment. Mr. McCullough and his wife ("Plaintiffs" or "Appellants") sued Johnson City Medical Center Hospital, Inc. ("the Hospital"); Dr. Monteith; Johnson City Emergency Physicians; Dr. Wyche; and Wyche & Wyche. Plaintiffs later filed a second amended complaint adding Cardiology Consultants and Kmart Corporation ("Kmart") as defendants. The various defendants answered the second amended complaint alleging comparative fault against Cardiology Consultants. Cardiology Consultants and Kmart were granted summary judgment. Several days into trial, Plaintiffs moved for leave to file a third amended complaint re-adding Cardiology Consultants as a defendant relying on Tenn.Code Ann. § 20–1–119. The Trial Court denied this motion as well as Plaintiffs' motion for a mistrial. The jury rendered a defense verdict. Plaintiffs appeal. We affirm.[1]

### Background

On September 1, 1997, Mr. McCullough had an acute anterior myocardial infarction. He was treated in the hospital by Dr. Blacky of Cardiology Consultants. Mr. McCullough was discharged from the hospital on September 7, 1997, after being placed on several medications including as-

---

1. Oral argument was heard in this case on November 15, 2002, at Knoxville Fulton High School, as part of the Court's C.A.S.E. (Court of Appeals Affecting Student Education) project.

pirin, Ticlid, and Coumadin, an anticoagulant. Patients on Coumadin generally are instructed to have regular testing of the level of anticoagulation of the blood. These tests are referred to as prothrombin times or protimes. Cardiology Consultants tested Mr. McCullough's protimes on September 9, 1997, and again on September 10, 1997, and determined the protimes were therapeutic. Mr. McCullough did not return to Cardiology Consultants to have his protimes checked again.

On September 13, 1997, Mr. McCullough presented to the emergency room at Johnson City Medical Center where he was seen by Dr. Monteith for complaints of abdominal pain.[2] Dr. Monteith prescribed an antibiotic, Augmentin, for a diagnosis of presumed diverticulitis. Dr. Monteith did not check Mr. McCullough's protimes, but noted in the chart Mr. McCullough was to follow up with his regular doctor early in the week.

On September 17, 18, or 19, 1997, a prescription for Lortab was called in to the Kmart pharmacy by someone at Cardiology Consultants. Mr. McCullough did not visit the offices of Cardiology Consultants during this time period and it is unclear from the record whether Mr. McCullough called Cardiology Consultants and requested a prescription. Mr. McCullough was determined not competent to testify and an Agreed Order was entered excluding his testimony at trial. Mrs. McCullough testified during deposition that her husband asked her to pick up the Lortab prescription from the Kmart pharmacy. Mrs. McCullough did not know and was unable to testify regarding whether her husband called Cardiology Consultants to request a prescription, and if so, whom he spoke with.

The Lortab prescription from the Kmart pharmacy bore the name of Dr. Blacky. Dr. Blacky testified during his deposition in March of 2000, he did not recall calling in the prescription for Lortab, had no notation in the chart regarding calling in this prescription, and was "astounded to see" his name attached to the Lortab prescription by the Kmart pharmacy. Dr. Blacky testified he normally would not call in a prescription for a narcotic, like Lortab, without seeing the patient first. Dr. Blacky also testified at his deposition that his office manager checked with the Kmart pharmacy and discovered all of Mr. McCullough's prescriptions which originated from Cardiology Consultants, with one exception, had his name on them, despite the fact his partner, Dr. Chang, had actually written the prescriptions for the medications.

Mr. McCullough was seen on September 23, 1997, by his family physician,[3] Dr. Wyche, at Wyche & Wyche, complaining of abdominal pain. Dr. Wyche scheduled an ultrasound of Mr. McCullough's abdomen for September 25, and referred Mr. McCullough to a gastroenterologist. Dr. Wyche did not check Mr. McCullough's protimes, but testified he believed Cardiology Consultants was monitoring the protimes.

Dr. Wyche next saw Mr. McCullough on September 26, 1997, for complaints of se-

---

**2.** Mr. McCullough had complained of abdominal pain during his hospital admission for the myocardial infarction.

**3.** The record indicates a dispute regarding whether Dr. Wyche was Mr. McCullough's primary care physician ("PCP"). The evidence indicates at one point, Dr. Wyche believed he was Mr. McCullough's PCP. Dr. Wyche testified, however, he held this belief prior to learning Mr. McCullough was being seen on a long-term and regular basis by doctors at the Veterans Administration, who were prescribing monthly supplies of medication.

vere headache. Dr. Wyche arranged for an emergency CT scan to be done that day at Northside Hospital, where Mr. McCullough was admitted with a cerebellar hemorrhage. Mr. McCullough was transferred on the 27th of September to Johnson City Medical Center where he suffered a massive cerebellar hemorrhage resulting in some permanent impairment.

Plaintiffs filed suit on August 28, 1998, naming the Hospital, Dr. Monteith, Johnson City Emergency Physicians, Dr. Wyche, and Wyche & Wyche as defendants. Plaintiffs took a voluntary nonsuit as to the Hospital only in an Order of Nonsuit filed on October 6, 1998.

In March of 2000, the discovery deposition of Dr. Blacky was taken. Dr. Blacky testified he did not call in the prescription for Lortab. Plaintiffs moved for leave to amend their complaint and on March 30; 2000, the Trial Court entered an order allowing Plaintiffs to file a Second Amended Complaint adding Cardiology Consultants and Kmart as defendants.

Cardiology Consultants was the first defendant to answer the Second Amended Complaint, filing its answer on May 16, 2000. Kmart filed its answer to the Second Amended Complaint on May 23, 2000, and in this answer alleged the comparative fault of its co-defendants. Cardiology Consultants and Kmart subsequently filed motions for summary judgment. On December 18, 2000, the Trial Court entered an order denying Kmart's motion for summary judgment and granting Cardiology Consultants' motion for summary judgment to the extent of claims under the doctrine of respondeat superior based upon acts or omissions of Dr. Blacky, but denying Cardiology Consultants' motion as to claims based upon acts or omissions of all other employees. The Trial Court Order also allowed Kmart and Cardiology Consultants to appeal immediately the de-

nial of the motions for summary judgment. Kmart and Cardiology Consultants made application for an interlocutory appeal to this Court, which was denied.

Dr. Monteith and Johnson City Emergency Physicians filed their answer to the Second Amended Complaint on January 22, 2001. This answer did not contain allegations of comparative fault against any co-defendants.

By order entered June 11, 2001, the Trial Court granted Kmart leave to file its Second Amended Answer, which added an affirmative defense to assert the comparative fault of Dr. Blacky, a non-party. Plaintiffs filed a Motion to Amend Complaint to add new allegations against Cardiology Consultants as the employer of Dr. Blacky. On June 28, 2001, Dr. Wyche and Wyche & Wyche filed their answer to the Second Amended Complaint and pled modified comparative fault relative to Kmart and Cardiology Consultants. The Trial Court entered an agreed order on July 5, 2001, granting Dr. Monteith and Johnson City Emergency Physicians leave to amend their answer to allege the comparative fault of Dr. Blacky.

Kmart and Cardiology Consultants both renewed their motions for summary judgment. By order entered July 17, 2001, the Trial Court granted summary judgment to Kmart and Cardiology Consultants on the ground the action was barred by the statute of limitations, and further, as to Kmart, that it did not deviate from the recognized standard of care.

Trial began on July 25, 2001. On July 31, 2001, Plaintiffs filed their motion for leave to file a third amended complaint re-adding Cardiology Consultants as a defendant relying on Tenn.Code Ann. § 20–1–119. Plaintiffs' motion stated it was made within 90 days of the first answer to allege fault against Cardiology Consultants,

namely the answer filed by Dr. Wyche and Wyche & Wyche.

The Trial Court denied Plaintiffs' motion for leave to file a third amended complaint during trial and also denied Plaintiffs' motion for a mistrial. The Trial Court placed Cardiology Consultants' name on the verdict form for allocation of fault. The jury returned a defense verdict, never reaching the question regarding allocation of fault. Plaintiffs appealed to this Court.

In an attempt to make this Opinion more understandable, we set forth below in brief form a time line of the relevant dates.

Sept. 1, 1997 Mr. McCullough suffers heart attack—treated by Dr. Blacky

Sept. 9 & 10, 1997 Mr. McCullough's protimes were checked by Cardiology Consultants

Sept. 13, 1997 Mr. McCullough visited emergency room—treated by Dr. Monteith

Sept. 17, 18 or 19, 1997 Prescription for Lortab called in to Kmart pharmacy by someone at Cardiology Consultants

Sept. 23, 1997 Mr. McCullough saw Dr. Wyche with complaints of abdominal pain

Sept. 26, 1997 Mr. McCullough saw Dr. Wyche with complaints of headache

Sept. 27, 1997 Mr. McCullough transferred to Johnson City Medical Center, where he suffered a massive cerebellar hemorrhage

Aug. 28, 1998 Suit filed against Dr. Monteith, Johnson City Emergency Physicians, Dr. Wyche, and Wyche & Wyche

March 30, 2000 Order allowing Plaintiffs to file Second Amended Complaint adding Cardiology Consultants and Kmart as defendants

May 16, 2000 Cardiology Consultants answers Second Amended Complaint

May 23, 2000 Kmart answers Second Amended Complaint—alleges fault against all co-defendants

Dec. 18, 2000 Order denying Cardiology Consultants and Kmart summary judgment

Jan. 22, 2001 Dr. Monteith and Johnson City Emergency Physicians answer Second Amended Complaint but do not allege fault against co-defendants

June 28, 2001 Dr. Wyche and Wyche & Wyche answer Second Amended Complaint-plead modified comparative fault as to Cardiology Consultants

July 17, 2001 Kmart and Cardiology Consultants granted summary judgment

July 25, 2001 Trial begins

July 31, 2001 Plaintiffs move for leave to file Third Amended Complaint

### *Discussion*

While not stated exactly as such, Appellants raise the following issues on appeal: (1) whether the Trial Court erred when it granted Cardiology Consultants summary judgment based upon the statute of limitations; (2) whether the Trial Court erred in denying Plaintiffs' motion to amend their complaint during trial to re-add Cardiology Consultants as a defendant, under Tenn. Code Ann. § 20–1–119; (3) whether the Trial Court erred in denying Plaintiffs' motion for a mistrial after the Trial Court refused to allow Plaintiffs to amend their complaint during trial to re-add Cardiology Consultants; and (4) whether the Trial Court erred by including Cardiology Consultants on the verdict form.

■ We begin by considering whether the Trial Court erred when it granted Cardiology Consultants summary judgment based upon the statute of limitations. Cardiology Consultants first argues Plain-

tiffs did not timely appeal the grant of summary judgment. The Order granting summary judgment to Cardiology Consultants was appealable when filed on July 17, 2001, as the Order contained the appropriate language required under Tenn. R. Civ. P. 54.02 stating: "There being no just reason for delay this is a final Judgment as to Cardiology Consultants. . . ." Plaintiffs, however, filed a motion to reconsider the grant of summary judgment on July 31, 2001, which in substance was a motion to alter or amend under Tenn. R. Civ. P. 59.04. This timely filed Rule 59 motion tolled the time in which to appeal a final judgment such that Plaintiffs had 30 days after the entry of the order on the Rule 59 motion in which to file an appeal. As Plaintiffs' notice of appeal was filed in November, 2001, prior to the entry of the Trial Court's December 17, 2001, order on Plaintiffs' motion to reconsider, we hold Plaintiffs timely appealed the grant of summary judgment to Cardiology Consultants. We, therefore, must consider whether the Trial Court erred in granting summary judgment to Cardiology Consultants.

Our Supreme Court instructs:

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. See Hunter v. Brown, 955 S.W.2d 49, 50–51 (Tenn.1997); Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the mo-

tion, see Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. See Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. See Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. See Byrd v. Hall, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. See McCarley v. West Quality Food Serv., 960 S.W.2d 585, 588 (Tenn.1998); Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. See McCarley v. West Quality Food Serv., 960 S.W.2d at 588; Robinson v. Omer, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving

party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88–89 (Tenn.2000) (footnote omitted).

We find there is no genuine issue with regard to the material facts relevant to Cardiology Consultants' defense as contained in its motion for summary judgment. A review of the record discloses Plaintiffs failed to comply with the provisions of Tenn. R. Civ. P. 56.03 with regard to responding to Cardiology Consultants' statement of undisputed material facts. The Trial Court noted this failure in its Order granting summary judgment.

The applicable statute of limitations is found in Tenn.Code Ann. § 29–26–116(a), which provides: "(1) The statute of limitations in malpractice actions shall be one (1) year.... (2) In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn.Code Ann. § 29–26–116(a) (2002).

Appellants argue section (2) of Tenn. Code Ann. § 29–26–116(a), which sets out the discovery rule, should be applied to determine the statute of limitations in this case. The discovery rule, first adopted by our Supreme Court in *Teeters v. Currey,* was codified in 1975, in Tenn.Code Ann. § 29–26–116. *Shadrick v. Coker,* 963 S.W.2d 726, 733 (Tenn.1998)(citing *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974)). Our Supreme Court stated that creation of

a discovery rule was necessary to "alleviate the intolerable result of barring a cause of action by holding that it 'accrued' before the discovery of the injury or the wrong." *Foster v. Harris,* 633 S.W.2d 304, 305 (Tenn.1982). Without the discovery rule, a plaintiff would be required to file suit when the injury was "unknown and unknowable." *Stanbury v. Bacardi,* 953 S.W.2d 671, 675 (Tenn.1997)(quoting *Teeters,* 518 S.W.2d at 515).

Our Supreme Court "has interpreted Tenn.Code Ann. § 29–26–116(a)(2) to mean that the statute of limitations commences to run when the patient 'discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced [the patient's] injuries; and (2) the identity of the defendant who breached the duty.'" *Shadrick,* 963 S.W.2d at 733 (citing *Stanbury,* 953 S.W.2d at 677 (quoting *Foster,* 633 S.W.2d at 305)). The *Shadrick* Court stated:

> as we have recently emphasized, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. 'It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial.' Such knowledge includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury.

*Shadrick,* 963 S.W.2d at 733–34 (quoting *Stanbury,* 953 S.W.2d at 678) (citations omitted). "Advice from another health care professional that a claim exists is not a prerequisite to accrual of a medical malpractice cause of action. In fact, [our Supreme Court has] specifically rejected such a requirement in the context of medical

and legal malpractice actions." *Stanbury*, 953 S.W.2d at 678.

■ Appellants argue their cause of action against Cardiology Consultants did not accrue until they knew, or should have known, Cardiology Consultants employed an unknown medical provider who, rather than Dr. Blacky, called the prescription for Lortab in to the Kmart pharmacy. Appellants claim this information did not come to light until Dr. Blacky was deposed in March of 2000. We find this argument unconvincing. Appellants knew someone at Cardiology Consultants called in the prescription for Lortab long before Dr. Blacky was deposed. Whether the person who called the prescription for Lortab in to the Kmart pharmacy was Dr. Blacky or another employee of Cardiology Consultants is immaterial since Appellants knew the prescription originated from Cardiology Consultants. As found by the Trial Court, Plaintiffs knew or should have known more than one year before the filing of their complaint that an injury had been sustained as a result of the alleged wrongful or tortious conduct of Cardiology Consultants.

Mr. McCullough's injury occurred in September of 1997. Appellants, however, did not add Cardiology Consultants to the suit as a defendant until March of 2000, long after the one-year statute of limitations had run. We hold, therefore, the Trial Court properly granted summary judgment to Cardiology Consultants based upon the fact the statute of limitations had run, and we affirm on this issue.

■ We next consider whether the Trial Court erred in denying Appellants' motion to amend their complaint during trial to re-add Cardiology Consultants, under Tenn.Code Ann. § 20–1–119. "The denial of a motion to amend the pleadings lies within the sound discretion of the trial court and will not be reversed absent a showing of abuse of discretion." *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn.Ct.App. 2001).

Tenn.Code Ann. § 20–1–119 provides:

(a) In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against such person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging such person's fault, either:

(1) Amend the complaint to add such person as a defendant . . . ; or

(2) Institute a separate action against that person by filing a summons and complaint. . . .

(b) A cause of action brought within ninety (90) days pursuant to subsection (a) shall not be barred by any statute of limitations. This section shall not extend any applicable statute of repose, nor shall this section permit the plaintiff to maintain an action against a person when such an action is barred by an applicable statute of repose.

Tenn.Code Ann. § 20–1–119 (2002).

This Court dealt with a situation strikingly similar to the case at hand in *Townes v. Sunbeam Oster Co.*, 50 S.W.3d 446

(Tenn.Ct.App.2001)[4]. *Townes* involved a products liability action stemming from the explosion of a propane grill, wherein the plaintiffs originally sued several entities, including the grill manufacturer. *Id.* at 448. Plaintiffs took a voluntary nonsuit against the grill manufacturer and later filed a second amended complaint re-adding the grill manufacturer as a defendant. *Id.* In their answer to the second amended complaint, another defendant asserted the grill manufacturer was a party who caused or contributed to the injuries. *Id.* at 451. The Trial Court granted the grill manufacturer summary judgment based upon the fact the amended complaint was barred by the statute of limitations. *Id.* at 448. Plaintiffs then attempted to invoke Tenn. Code Ann. § 20–1–119 and sought leave to file a third amended complaint re-adding the grill manufacturer as a defendant. *Id.* The Trial Court refused to allow plaintiffs to file their third amended complaint and plaintiffs appealed. *Id.* This Court reversed the Trial Court's denial of plaintiffs' motion to file their third amended complaint and held plaintiffs had met all of the conditions set out in Tenn.Code Ann. § 20–1–119, and should be allowed to invoke the statute to re-add the grill manufacturer as a defendant. *Id.* at 447, 454.

Tenn.Code Ann. § 20–1–119 allows a plaintiff ninety days in which to assert a claim against an alleged comparative tort-feasor if two conditions are met. *Townes,* 50 S.W.3d at 452. First, the comparative tort-feasor must have been named by a defendant sued within the applicable statute of limitations in its answer or amended answer as one who "caused or contributed to the injury or damage for which the plaintiff seeks recovery." Tenn.Code Ann.

§ 20–1–119(a)(2002). Second, the comparative tort-feasor must not be "a party to the suit." *Id.* If both conditions are met, the plaintiff has ninety days in which to add the comparative tort-feasor to the suit or to file a separate action against the comparative tort-feasor, even if the statute of limitations has expired. *Id.*

The *Townes* Court held:

> [A]n added defendant's status as a party should be determined, not when the original defendant names the added defendant as an additional comparative tortfeasor in its answer or amended answer, but rather when the plaintiff either seeks to amend its complaint to name the additional comparative tortfeasor as an additional defendant or to file a separate complaint against the additional comparative tortfeasor.

*Townes,* 50 S.W.3d at 454.

Kmart was the first defendant to allege fault against its co-defendants, including Cardiology Consultants, in its answer to the Second Amended Complaint filed May 23, 2000. Tenn.Code Ann. § 20–1–119, however, specifically provides the defendant alleging comparative fault against the non-party must have been sued within the applicable statute of limitations. Tenn. Code Ann. § 20–1–119(a) (2002). The Trial Court granted Kmart summary judgment because Plaintiffs did not sue Kmart within the applicable statute of limitations. Plaintiffs have not appealed the Trial Court's grant of summary judgment to Kmart. Therefore, we disregard Kmart's answers for purposes of our § 20–1–119 analysis.

---

4. We note, although our Supreme Court denied the application for permission to appeal in *Townes v. Sunbeam Oster, Co.,* it subsequently granted the application filed in *McClendon v. Bunick,* and remanded *McClen-* *don* to this Court for reconsideration in light of the *Townes* decision. *McClendon v. Bunick,* E1999–02761–SC–R11–CV, 2001 Tenn. LEXIS 748 (Tenn. Sept. 24, 2001).

Dr. Wyche and Wyche & Wyche were the next defendants to identify Cardiology Consultants as a party who caused or contributed to Plaintiffs' injuries in their answer to the Second Amended Complaint, which was filed on June 28, 2001. At that time, however, Cardiology Consultants was a party to the suit, and therefore, both conditions of Tenn.Code Ann. § 20–1–119 were not satisfied and the statute could not be invoked. The second condition of § 20–1–119 was not met until the Trial Court granted Cardiology Consultants summary judgment on July 17, 2001, making Cardiology Consultants a non-party. Thus, when Plaintiffs moved for leave to file a Third Amended Complaint to re-add Cardiology Consultants as a defendant, on July 31, 2001, both conditions of Tenn. Code Ann. § 20–1–119 were met. In addition, Plaintiffs made the motion to amend their complaint well within the ninety-day period allowed by the statute.

Plaintiffs argue that since Cardiology Consultants was already a Defendant when Kmart filed its answer on May 23, 2000, Tenn.Code Ann. § 20–1–119 was triggered then so as to allow Plaintiffs' July 2001, filing against Cardiology Consultants somehow to have been timely. This argument overlooks the clear language of this statute. As discussed, Kmart's answer could not trigger Tenn. Code Ann. § 20–1–119 because Plaintiffs did not sue Kmart within the applicable statute of limitations and Cardiology Consultants was a party to the suit until July 17, 2001.

It is the responsibility of the Legislature to enact statutes it deems appropriate. It is the responsibility and obligation of the courts to give effect to the statutes as written, subject to constitutional limitations. Our Legislature chose in Tenn. Code Ann. § 20–1–119(a) to include the two requirements that the defendant whose answer alleges that some other person or entity caused or contributed to the injury or damages must have been sued within the applicable statute of limitations, and that the person or entity to be added by a plaintiff as a defendant pursuant to this statute be "a person not a party to the suit. . . ." Tenn.Code Ann. § 20–1–119(a) (2002). This unambiguous language is clear and lends itself to no interpretation other than the entity or person to be added as a defendant, in this case Cardiology Consultants, must not be a party to the suit for Tenn.Code Ann. § 20–1–119 to be applicable. Likewise, the defendant alleging fault by the non-party must have been timely sued. It is not for the courts to alter or amend this statute. *E.g., Town of Mount Carmel v. City of Kingsport,* 217 Tenn. 298, 397 S.W.2d 379, 382 (1965); *Manahan v. State,* 188 Tenn. 394, 219 S.W.2d 900, 901 (1949). As the language of this statute is unambiguous, the legislative intent must be derived from the plain and ordinary meaning of the statutory language itself. *E.g., Kite v. Kite,* 22 S.W.3d 803, 805 (Tenn.1997). We have no alternative but to construe this statute as it is written.

■ Although Tenn.Code Ann. § 20–1–119 tolls the statute of limitations, it does not toll the statute of repose. Tenn.Code Ann. § 20–1–119(b)(2002). Tenn.Code Ann. § 29–26–116 sets out the repose period for medical malpractice actions and states: "In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, . . ." Tenn.Code Ann. § 29–26–116(a)(3) (2002).

After a thorough review of the record, we find no evidence of fraudulent concealment of the alleged negligent act or omission on the part of Cardiology Consultants.

Cardiology Consultants neither attempted to conceal the fact that someone at Cardiology Consultants called in the prescription for Lortab, nor attempted to conceal the dates upon which Mr. McCullough's protimes were tested and the results of those tests.

 The alleged negligent act or omission of Cardiology Consultants occurred in September of 1997. Plaintiffs, however, did not, and could not, attempt to invoke Tenn.Code Ann. § 20–1–119 until after Dr. Wyche and Wyche & Wyche filed their answer in June of 2001, and Cardiology Consultants became a non-party to the suit in July of 2001. The Wyche answer filed June 28, 2001, was the first answer filed that could have triggered Tenn.Code Ann. § 20–1–119. The Wyche answer was filed more than three years after the date on which Cardiology Consultants' alleged negligent act or omission occurred. Tenn. Code Ann. § 20–1–119 does not extent the three year statute of repose. Therefore, the statute of repose had expired and Plaintiffs could not utilize Tenn.Code Ann. § 20–1–119 to re-add Cardiology Consultants as a defendant. Although Plaintiffs had met the two conditions of Tenn.Code Ann. § 20–1–119 on July 31, 2001, and filed their motion within the ninety days

allowed by the statute, a decision to allow the amendment to the complaint would have been an exercise in futility as the statute of repose had expired. Although leave to amend pleadings is to be freely given under Tenn. R. Civ. P. 15, trial courts are not required to grant such motions if "the amendment would have been futile." *Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 923 (Tenn.Ct.App. 1991); *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn.Ct.App.1979). We, therefore, hold the Trial Court did not abuse its discretion, and affirm the Trial Court's denial of Plaintiffs' motion to amend their complaint during trial to re-add Cardiology Consultants, under Tenn.Code Ann. § 20–1–119.[5]

 We next consider whether the Trial Court erred in denying Plaintiffs' motion for a mistrial after the Trial Court refused to allow Plaintiffs to amend their complaint during trial to re-add Cardiology Consultants. "The decision of whether to grant a mistrial is within the sound discretion of the trial court. [The] Court will not disturb that decision absent a finding of an abuse of discretion." *State v. Dellinger*, 79 S.W.3d 458, 494 (Tenn.2002) (citations omitted). We should not reverse for "abuse of discretion" a discretionary judg-

5. We note, Appellants' reply brief argues the statute of repose does not bar re-adding Cardiology Consultants because Appellants can invoke Tenn.Code Ann. § 28–1–105, the saving statute, to toll the statute of repose. Appellants argue their motion to file the third amended complaint was made within one year of the dismissal of Cardiology Consultants from the suit, and therefore, they can utilize the saving statute to re-file suit against Cardiology Consultants. This argument is fallacious. The saving statute does allow a plaintiff to re-file suit within one year of a dismissal if certain conditions are met. Those conditions were not met in this case. Our Supreme Court has held: "a plaintiff who initially files a medical malpractice action within the one-year statute of limitations and

the three-year statute of repose can rely upon the savings statute and refile the action within one year of a voluntary dismissal, even though the voluntary dismissal and refiling occur beyond the three-year medical malpractice statute of repose." *Sharp v. Richardson*, 937 S.W.2d 846, 848 (Tenn.1996) (discussing the holding in *Cronin v. Howe*, 906 S.W.2d 910, 914–15 (Tenn.1995)). Thus, the original complaint against that defendant must have been filed within the one-year statute of limitations in order for the saving statute to apply. We have already determined Plaintiffs' second amended complaint, their first attempt to sue Cardiology Consultants, was not filed within the one-year statute of limitations, and therefore, Appellants cannot use the saving statute to toll the statute of repose.

ment of a Trial Court unless it affirmatively appears that the Trial Court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining. *Marcus v. Marcus,* 993 S.W.2d 596 (Tenn.1999).

 We find no evidence the Trial Court's decision to deny Plaintiffs a mistrial was against logic or reasoning, or that such decision caused an injustice or injury to Plaintiffs. Plaintiffs had missed both the statute of limitations and the statute of repose and could not re-add Cardiology Consultants as a defendant to the suit whether a mistrial was granted or not. Plaintiffs were given a full and fair opportunity to try their case against the named defendants, and they did so. We hold the Trial Court did not abuse its discretion in denying the motion for mistrial.

We next turn to whether the Trial Court erred by including Cardiology Consultants on the verdict form. Although the Trial Court included Cardiology Consultants on the verdict form, the jury never reached the question of whether Cardiology Consultants was partially responsible because it found the defendants were not liable. While Plaintiffs state this as one of the issues in their Brief, they never discuss it nor state any reasons or make any argument as to why it was error for the Trial Court to include Cardiology Consultants on the verdict form. We also need not decide whether or not it was error to include Cardiology Consultants on the verdict form as it did not "involv[e] a substantial right [that] more probably than not affected the judgment or [ ] result[ed] in prejudice to the judicial process." Tenn. R.App. P. 36(b). As a result, we affirm the Trial Court's decision to include Cardiology Consultants on the verdict form.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellants, Joseph McCullough, et. ux., and their surety.