IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 13, 2018 Session

## RICHARD DARRELL TRIGG v. JOSEPH CHURCH, ET AL.

**Appeal from the Chancery Court for Hawkins County**
**No. 2017-CH-32     Robert E. Lee Davies, Senior Judge**

_____

**No. E2017-01834-COA-R3-CV**
_____

This appeal involves an action where the plaintiff sought to divest the defendants' interest in their property by showing that their purchase of the property occurred through theft or the exploitation of the plaintiff's ex-wife. The trial court granted summary judgment in favor of the defendants and dismissed the plaintiff's motion for a mistrial and the action itself. The plaintiff appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES SUSANO, JR., J., and FRANK G. CLEMENT, P.J., M.S., joined.

Richard Darrell Trigg, Big Stone Gap, Virginia, pro se appellant.

Phillip L. Boyd, Rogersville, Tennessee, and Payton M. Bradford, Nashville, Tennessee, for the appellees, Joseph Church, Kimi Church, and Chicago Title Insurance Company.

## OPINION

### I.     BACKGROUND

Plaintiff Richard Darrell Trigg ("Mr. Trigg") and Lori Kay Jones ("Ms. Jones") were married on April 30, 1988. Ms. Jones filed a divorce complaint against Mr. Trigg on April 12, 2012. Both Ms. Jones and Mr. Trigg signed and entered into a marital dissolution agreement ("MDA") on January 11, 2013. The trial court incorporated the MDA in a final judgment of divorce issued on March 5, 2013. Less than a month later, Mr. Trigg filed a motion to alter or amend the divorce judgment or to grant a new trial. In the motion, Mr. Trigg argued that Ms. Jones did not have the mental capacity to enter into the MDA and that he was coerced into signing the MDA through a threat of jail time from her relatives. The trial court denied Mr. Trigg's motion and struck from the record

a supporting affidavit that Mr. Trigg filed alongside the motion. Mr. Trigg appealed the case to this court, which affirmed the trial court's ruling on January 5, 2015. The Supreme Court of Tennessee denied Mr. Trigg's application for permission to appeal on April 2, 2015. In June 2015, Mr. Trigg filed a motion that sought to delay the implementation of the divorce judgment. The motion again argued that Ms. Jones was incapable of signing the MDA. Through a new judge sitting by interchange, the trial court denied Mr. Trigg's motion.

On September 4, 2015, a hearing was held concerning the sale of Mr. Trigg's and Ms. Jones's property at 233 Shephards Chapel Road, Rogersville, Tennessee (the "Property") to potential buyers Shawn and Tammy Clevenger. After deeming a potential contract as fair and equitable, the trial court instructed Mr. Trigg and Ms. Jones to execute a contract and sell the Property for $415,000. Immediately after the hearing, Mr. Trigg drove to the home of the Clevengers and tried to convince them to terminate the contract. Mr. Trigg made comments similar to what the trial court once described as misrepresentations. The Clevengers terminated the contract of sale based on their concerns about Mr. Trigg and his comments. Ms. Jones then filed a petition for contempt against Mr. Trigg and a motion to enforce the court order. The trial court found that Mr. Trigg actively resisted the terms of the MDA, court orders, and the agreement to sell the Property. The trial court then divested Mr. Trigg of his ownership in the Property. Ms. Jones was vested sole title in the Property and instructed to sell the land with the proceeds of the sale to be distributed per the trial court's orders.

During this time, Defendants Joseph and Kimi Church (the "Churches") were interested in moving from Florida to East Tennessee and entered into a buyer representation agreement with real estate agent Alan Simpson on October 16, 2015. Mr. Simpson learned the Property was for sale and took the Churches to view it. At the time, the Churches had no reason to know of Mr. Trigg or his history with the Property. The Churches made an offer to purchase the Property for $415,000, which Ms. Jones accepted. The sale closed on February 16, 2016, and Ms. Jones executed a warranty deed that transferred the Property to the Churches. The trial court disbursed the proceeds of the Property to Ms. Jones and Mr. Trigg on February 25, 2016, after accounting for various liens. Mr. Trigg alleged that, at some point, he returned to the Property to try to retrieve personal items and was subsequently arrested for what he described as "false accusations."

In March 2016, Mr. Trigg filed a separate motion that challenged the validity of the divorce judgment, sought to stay parts of the judgment, and attempted to force the trial judge to recuse himself from the case. In the motion, Mr. Trigg asserted that Ms. Jones's family took advantage of alleged mental health issues and led her to file a divorce complaint. The motion was denied by the trial court, and Mr. Trigg appealed the decision to this court. On April 27, 2016, we upheld the trial court's actions.

Mr. Trigg, pro se, filed a complaint against the Churches on February 14, 2017, that sought to invalidate two warranty deeds that divested him of interest in the Property and conveyed the Property from Ms. Jones to the Churches. Though Ms. Jones was not a party to this lawsuit, Mr. Trigg sought to obtain her psychiatric records to show his ex-wife's alleged mental issues and argue that she was incapable of selling the Property or agreeing to the MDA. Further, Mr. Trigg cited Tennessee Code Annotated section 39-14-111 to argue that the Churches (and Ms. Jones's family) knew about Ms. Jones's alleged mental issues and exploited her through the divorce and sale of the Property. Mr. Trigg also sought to freeze Ms. Jones's assets through Tennessee Code Annotated section 39-14-111. The Churches responded with an answer denying Mr. Trigg's allegations and citing several affirmative defenses. They also filed a separate counterclaim against Mr. Trigg, accusing him of filing "useless, annoying and meritless suits" against them about the sale. They alleged that a previous action had been dismissed as meritless in the Hawkins County General Sessions Court. The Churches also filed a Motion for Summary Judgment on March 27, 2017, arguing that Mr. Trigg had already litigated the issues raised, previously received compensation for the sale of the Property, and could not sue them as bona fide purchasers who bought the land in good faith and for consideration.

Mr. Trigg challenged the counterclaim and affirmative defenses and sought $1.3 million from the Churches and their attorneys for allegedly defamatory statements in their counterclaim. Mr. Trigg also challenged the Motion for Summary Judgment, making similar arguments as were made in his previous pleadings and failing to respond to the Churches' undisputed facts as required by Rule 56.03 of the Tennessee Rules of Civil Procedure. The Churches subsequently filed a Motion to Dismiss to remove the defamation allegations from the case. The Churches' counterclaim was voluntarily dismissed on May 11, 2017.

Weeks later, Mr. Trigg attempted to subpoena records from Dr. Shirley Trentham ("Dr. Trentham") and the Helen Ross McNabb Center concerning Ms. Jones's mental health. The Churches filed a motion for a protective order to prevent testimony, but the trial court partially denied the motion and allowed Mr. Trigg to depose Dr. Trentham, Ms. Jones's former psychiatrist, on June 30, 2017. During the deposition, Dr. Trentham provided her opinion that Ms. Jones did not suffer from a mental dysfunction that would lead to being exploited or taken advantage of by others. When asked directly about Ms. Jones's mental health or her communications with Ms. Jones, Dr. Trentham cited privilege through a therapeutic counseling relationship and declined to answer questions posed by Mr. Trigg. Dr. Trentham also acknowledged that she spoke with one of the Churches' attorneys before the deposition about privilege laws connected to her testimony. On July 21, 2017, Mr. Trigg moved for a mistrial, called for Dr. Trentham to be found in contempt of court for refusing to answer his questions, and accused one of the Churches' attorneys of tampering with a witness, coercion of a witness, and contempt of court by communicating with Dr. Trentham before the deposition. Following this

3

motion, the Churches filed a Motion for Sanctions against Mr. Trigg requesting the court to find him in criminal contempt. The trial court denied Mr. Trigg's motion for a mistrial on July 31, 2017, stating that Mr. Trigg received the unprivileged information he requested and made unfounded allegations against the Churches' attorney.

The trial court heard arguments for the Churches' Motion for Summary Judgment on August 10, 2017. Mr. Trigg was required to respond to the Churches' undisputed facts which he did not address in his initial response. Mr. Trigg confirmed that he received his entitled proceeds from the sale of his former Property, previously litigated the issue of Ms. Jones's mental state, and had no evidence to dispute that the Churches had no knowledge of Mr. Trigg's divorce and were bona fide, good faith purchasers of the Property for consideration.

The trial court granted summary judgment in favor of the Churches and dismissed Mr. Trigg's complaint with prejudice. In a memorandum and order filed September 4, 2017, the trial court found that Mr. Trigg failed to state or prove his claim that Ms. Jones had been exploited by the Churches and was barred by collateral estoppel from litigating further issues about Ms. Jones's mental status. Further, the trial court granted the Churches' motion for sanctions against Mr. Trigg. The court required him to pay reasonable expenses and attorney's fees for the Churches and forbade the local Clerk and Master from accepting or filing any pleadings from Mr. Trigg regarding Ms. Jones's mental condition or their final divorce judgment.

Before the sanctions were finalized, Mr. Trigg prematurely filed a Notice of Appeal and subsequently filed a Motion for Review to stay the trial court's sanctions with this court. We denied the Motion for Review for failing to comply with Rule 7 of the Tennessee Rules of Appellate Procedure. On the day before the sanctions hearing, Mr. Trigg attempted to appeal the denial to the Supreme Court of Tennessee. The trial court affirmed the sanctions before the Supreme Court received the Motion for Review, rendering the motion moot. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal by Mr. Trigg as follows:

1.    Whether the trial court properly granted summary judgment and dismissed Mr. Trigg's claim under Tennessee Code Annotated section 39-14-111 when the plaintiff admitted that he previously litigated issues regarding his wife's mental health, received all proceeds from a home sale he alleged occurred through exploitation, and had no evidence to dispute the buyers were bona fide purchasers in good faith.

4

2.      Whether the trial court properly denied a motion to declare a mistrial or grant other sanctions when Mr. Trigg did not receive privileged information during a deposition and claimed coercion and witness tampering against opposing counsel.

## III.      STANDARD OF REVIEW

Our Supreme Court applies the following standard for summary judgment:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a properly supported motion is made, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in [Rule 56 of the Tennessee Rules of Civil Procedure], 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citations omitted). "In doing so, we make a fresh determination of whether the requirements of [Rule 56] have been satisfied." *Id*. (citations omitted). All evidence must be viewed in the light most favorable to the nonmoving party, and all factual inferences must be resolved in favor of the nonmoving party. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

"Whether to grant a mistrial is a decision left to the discretion of the trial court." *Hunter v. Ura*, 163 S.W.3d 686, 699 (Tenn. 2004) (citations omitted). A trial court that makes a discretionary judgment should not be reversed for abuse of discretion "unless it affirmatively appears that the [t]rial [c]ourt's decision was against logic or reasoning, and causes an injustice or injury to the party complaining." *McCollough v. Johnson City Emergency Physicians, P.C.*, 106 S.W.3d 36, 47-48 (Tenn. Ct. App. 2002).

# IV. DISCUSSION

## Summary Judgment

Mr. Trigg argues that the trial court erred in granting summary judgment to the Churches and dismissing his efforts to divest the Churches' interest in his previous marital home. Based broadly on his briefs and oral argument, Mr. Trigg's claim is rooted in the previous Tennessee Code Annotated section 39-14-111. No particular section of the statute was cited in Mr. Trigg's argument. While the statute largely dealt with criminal actions, a single section allowed civil actions by adults, conservators, or next friends "for exploitation as defined in this section or for theft of such person's or adult's money or property whether by fraud, deceit, coercion, or otherwise." Tenn. Code Ann. § 39-14-111(h) (2015). Exploitation was defined as: "the improper use by a caretaker of funds that have been paid to an adult or to the caretaker for the use or care of the adult." Tenn. Code Ann. § 39-14-111(a)(3) (2015). The statute itself was repealed by the Tennessee General Assembly in May 2017, after the original lawsuit was filed. Similar language was codified in Tennessee Code Annotated section 39-15-502(f).

While Mr. Trigg repeatedly alleged in his trial court documents and appellate briefs that coercion and manipulation had occurred, he presented no evidence that the Churches took the Property from Ms. Jones through theft or exploitation. The Churches purchased the Property from Ms. Jones for $415,000, a price deemed fair by the divorce court and sufficient to show that the Property was not an object of theft. Further, Mr. Trigg does not dispute that he received all proceeds to which he was entitled from the sale. None of Ms. Jones's resources were used in the sale of the Property, as required to establish exploitation by the former statute. Even in the light most favorable to Mr. Trigg, none of his claims stated or proved that the Churches exploited or stole from Ms. Jones, as required under the former Tennessee Code Annotated section 39-14-111. Because the claims were insufficient to meet the standards of the statute, the trial court correctly applied summary judgment in this case.

Additionally, the trial court properly granted summary judgment through collateral estoppel, based on Mr. Trigg's past litigation concerning his divorce and Ms. Jones's mental condition. A question of law occurs when a court determines whether collateral estoppel applies. *Mullins v. State*, 294 S.W.3d 529, 535 (2009). Therefore, collateral estoppel can be appropriately evaluated as the court determines summary judgment. *Id*. Collateral estoppel can apply both offensively to defendants and defensively to plaintiffs. Defensive collateral estoppel applies when a defendant seeks to prevent a plaintiff from litigating an issue which the plaintiff previously raised and lost. *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107-08 (Tenn. 2016). In Tennessee, collateral estoppel "generally precludes relitigation of issues decided in prior lawsuits unless the party against whom collateral estoppel is asserted lacked a full and fair opportunity to litigate the issue in the first action or some other circumstance justifies affording that party an

opportunity to relitigate the issue." *Id.* at 116. As stated in his pleadings and affidavits in the present case, Mr. Trigg believed that obtaining Ms. Jones's mental health records were crucial in proving that she did not have the capacity to agree to file a complaint for divorce, sign an MDA, or sell the marital home. This court affirmed his divorce action after Mr. Trigg alleged that he was coerced into signing the MDA by threats from Ms. Jones's family and that Ms. Jones did not have the capacity to agree to the divorce. *Trigg v. Trigg*, No. E2014-00860-COA-R3-CV, 2015 WL 66544 at *2 (Tenn. Ct. App., Jan. 5, 2015). In a separate action to disqualify a trial court judge from hearing the case, Mr. Trigg moved to stay the effects of the divorce action and alleged that Ms. Jones's family "took advantage of [Ms. Jones's] 'mental health issues' in convincing her to file for divorce." *Trigg v. Trigg*, No. E2016-00695-COA-T10B-CV, 2016 WL 1730211 at *1 (Tenn. Ct. App., April 27, 2016). Mr. Trigg further admitted that he had previously litigated the issue of Ms. Jones's mental health and his claim that Ms. Jones had been manipulated by her family to divorce him and sell the Property under the terms of the MDA. Since Mr. Trigg initially litigated this divorce action, the issues surrounding his ex-wife and her mental state have remained key to his arguments. His allegations were not accepted at trial or on appeal. This court finds no reason to believe that Mr. Trigg lacked a fair opportunity to litigate these issues. He should not have an opportunity to bring these claims again. The trial court correctly applied collateral estoppel when awarding summary judgment in the present case.

Additionally, Mr. Trigg admitted that he had no evidence to dispute that the Churches were bona fide purchasers in good faith without notice of Mr. Trigg or his divorce from Ms. Jones. This court has defined a bona fide purchaser as: "one who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for Property without notice of prior adverse claims." *Rogers v. First Nat'l Bank*, No. M2004-2414-COA-R3-CV, 2006 WL 344759 at *12 (Tenn. Ct. App., Feb. 14, 2006). Generally, "a court of chancery may not reform a deed against a bona fide purchaser for value without notice." *Wallace v. Chase*, No. W1999-01987-COA-R3-CV, 2001 WL 394872, at *3 (Tenn. Ct. App., Apr. 17, 2001). In this case, Mr. Trigg was unable to dispute that the Churches were bona fide purchasers in good faith and did not have notice of the divorce and litigation that led to the eventual sale of the Property. Even when giving Mr. Trigg the benefit of the doubt, his claims could not allow the deed to be reformed in chancery court. The trial court was correct in granting summary judgment.

## Mistrial

On appeal, Mr. Trigg also claimed that the trial court erred when it denied his motion to declare a mistrial after a deposition with Dr. Trentham, the psychiatrist who had Ms. Jones as a patient. An appellate court shall use an abuse of discretion standard when reviewing a mistrial motion, not overruling the trial court "unless it affirmatively appears that the [t]rial [c]ourt's decision was against logic or reasoning, and causes an

injustice or injury to the party complaining." *McCollough v. Johnson City Emergency Physicians, P.C.*, 106 S.W.3d 36, 47-48 (Tenn. Ct. App. 2002). In the deposition, Dr. Trentham did not answer a series of questions directly tied to her work with Ms. Jones, citing the information as privileged under Tennessee Code Annotated section 24-1-207. That statute states that "[c]ommunications between a patient and a licensed physician when practicing as a psychiatrist in the course of and in connection with a therapeutic counseling relationship regardless of whether the therapy is individual, joint, or group, are privileged in proceedings before judicial and quasi-judicial tribunals." Tenn. Code. Ann. § 24-1-207(a). Exceptions to the statute allow testimony when a patient gives consent to the release of her records. *Id.* While Mr. Trigg could subpoena Dr. Trentham to testify in a deposition, that power did not grant him the ability to force Dr. Trentham to testify about privileged information. Even without this privileged information, Dr. Trentham provided information relevant to the case by stating that Ms. Jones never disclosed information to the psychiatrist that made her feel that Ms. Jones was a victim of abuse or exploitation under the former Tennessee Code Annotated section 39-14-111. In short, Mr. Trigg received relevant information from his witness and could not receive additional privileged information simply because he wanted it.

Mr. Trigg's additional arguments for a mistrial are rooted in his belief that one of the Churches' attorneys criminally tampered with and coerced a witness by speaking with Dr. Trentham before her testimony. Based on Dr. Trentham's testimony, her conversation with the attorney focused on the privilege statute that Dr. Trentham cited in her deposition and did not include threatening or coercive comments. Mr. Trigg's efforts to re-try this case and convince a civil court to criminally convict his opposing counsel based on these comments are absurd. The lawyer did nothing unreasonable in interacting with Dr. Trentham and talking about statutes he believed were relevant to her testimony. Mr. Trigg's arguments for a mistrial are unwarranted. The trial court did not abuse its discretion by rejecting his arguments and denying a motion for a mistrial.

## Frivolous Appeal

While not requested by the Churches, the nature of this appeal has led this court to consider whether frivolous costs may be warranted against Mr. Trigg. As state law provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. An appeal is considered frivolous when it has no reasonable chance of success or is "so utterly devoid of merit" that imposing a penalty is justified. *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006) (quoting *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978)). An appellate court is instructed to use this discretion sparingly to not prevent the filing of legitimate appeals. *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017). This court, with that knowledge, finds Mr. Trigg's appeal woefully short of stating a claim and without merit to a point where success was not reasonably possible. Accordingly, this appeal is deemed frivolous, and the Churches are entitled to the costs they incurred in defending it.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for the assessment of damages, to include reasonable attorney's fees, resulting from a frivolous appeal as stated in Tennessee Code Annotated section 27-1-122. Costs of the appeal are taxed to the appellant, Richard Darrell Trigg, for which execution may issue, if necessary.

_____
JOHN W. MCCLARTY, JUDGE