**Raymond TOWNES, et al.,**

v.

**SUNBEAM OSTER CO., INC., et al.**

Court of Appeals of Tennessee, at Nashville.

Feb. 5, 2001.

Permission to Appeal Denied by Supreme Court July 16, 2001.

448

Charles J. Williams and John B. Carlson, Nashville, TN, and Louis C. Accurso, Kansas City, MO, for appellants, Raymond Townes and Marie Giddens Townes.

Philip M. Kirkpatrick and Jeffrey M. Beemer, Nashville, TN, and James W. Ozog, Downers Grove, IL, for appellee, Sunbeam Oster Company, Inc.

## OPINION

KOCH, J., delivered the opinion of the court, in which CANTRELL and CAIN, JJ., joined.

This appeal involves a products liability action stemming from the explosion of a propane grill. The plaintiffs originally filed suit in the Circuit Court for Davidson County naming the grill manufacturer and others as defendants. Thereafter, they took a voluntary nonsuit against the grill manufacturer. The present dispute arose when the plaintiffs filed a second amended complaint asserting new claims against the grill manufacturer and additional claims against the other defendants. After the trial court granted a summary judgment for the manufacturer on the ground that the amended complaint was barred by the statute of limitations, the plaintiffs attempted to bring the manufacturer back into the litigation by seeking to file a third amended complaint pursuant to Tenn.Code Ann. § 20–1–119 (1994). The trial court declined to permit the plaintiffs to amend their complaint on the ground that Tenn. Code Ann. § 20–1–119 does not apply to parties who were known to the plaintiff when the original complaint was filed. The plaintiffs appealed to this court. We have determined that the trial court correctly concluded that the plaintiffs could not take advantage of the relation-back provisions in Tenn.R.Civ.P. 15.03; however, we have also concluded that the trial court should have permitted the amendment under Tenn.Code Ann. § 20–1–119.

On November 11, 1993, Raymond and Marie Townes purchased a portable propane gas grill from a Wal–Mart store. The grill was manufactured by Sunbeam Oster Co. ("Sunbeam") and incorporated a propane gas tank manufactured by Manchester Tank & Equipment Company ("Manchester"). On the same day the Townes purchased the grill, they filled the tank with propane at England Motors, Inc. ("England Motors") in Hermitage.

Approximately one week later, the Townes used their new grill at a cookout at their home. Following the cookout, they heard "popping" and "hissing" noises coming from the grill. On December 1, 1993, Mr. Townes discussed the problem with a Wal–Mart employee who instructed him to drain the propane tank and to return the grill to the store where he had purchased it. Mr. Townes undertook to empty the tank by opening the service valve to release the propane. When he thought the tank had been fully drained, he placed the grill and tank in his car trunk. Unbeknownst to Mr. Townes, the tank he believed to be empty still contained propane.

The propane gas continued to escape from the tank while the Townes drove to Wal–Mart to return the grill. Ms. Townes did not detect the odor of the escaping

propane. Mr. Townes smelled a faint odor of propane, but he believed that the odor was the residue of the propane that had been released when he emptied the tank. Regrettably, the propane gas that had escaped into the automobile exploded when one of the Townes ignited a cigarette. The explosion and ensuing fire injured both Mr. Townes and Ms. Townes.

On October 13, 1994, the Townes filed suit in the Circuit Court for Davidson County against Wal–Mart, Sunbeam, Manchester, England Motors, and Suburban Propane Gas Corporation ("Suburban"), the supplier of the propane they had purchased at England Motors.[1] The complaint alleged that the gas grill and the propane tank were defective and unreasonably dangerous because of a phenomenon known as "odor fade." It alleged that Sunbeam and Manchester should have been aware that purchasers would be unable to detect gas leaks because the smell of the chemical odorant added to propane gas to make it easier to detect was subject to fading when used in grills like the one the Townes had purchased.

Sunbeam filed its answer on December 15, 1994, denying liability and asserting that the Townes were at fault because of the way they used the grill. The other defendants also answered. During the discovery that ensued, the Townes, Sunbeam, and the other parties inspected the grill, as well as its propane tank. On August 10, 1995, ten months after filing their original complaint, the Townes voluntarily nonsuited Wal–Mart and Sunbeam

pursuant to Tenn.R.Civ.P. 41.01.[2] Later, one of the lawyers representing the Townes explained that they dismissed Sunbeam because of their mistaken belief that Sunbeam was not involved in manufacturing the propane tank. They apparently believed that Manchester was the sole manufacturer.

In January 1997, the Townes discovered that Manchester ordinarily installed two safety devices on tanks similar to the tank used on the Sunbeam grill but that it had not installed these devices on the tanks sold to Sunbeam.[3] In April 1997, as part of their settlement negotiations with Manchester, the Townes learned that Manchester had offered to include these safety devices on the tanks it sold to Sunbeam but that Sunbeam had declined to purchase tanks with these devices. Not surprisingly, the Townes decided that they would never have nonsuited Sunbeam had they possessed that information.

The Townes eventually settled their odor fade claims with Suburban and Shell. Thereafter, the trial court permitted the Townes to file a second amended complaint containing new design defect allegations against Manchester based on the absence of the two safety devices from the tank. The second amended complaint, which was filed on June 23, 1997—more than three years after the explosion—also named Sunbeam as a defendant and asserted new claims against Sunbeam for its failure to install the safety devices on the propane tank.

1. In September 1995, the Townes amended their complaint to add Shell Oil Company ("Shell") as a defendant after Suburban asserted that Shell had manufactured the propane gas that was in the tank when it exploded.

2. The trial court entered an order confirming the nonsuit on August 17, 1995.

3. These safety devices consisted of a stop-fill device which prevented overfilling the propane tank and a quick disconnect coupling that prevented the escape of propane gas from a disconnected tank with an open or partially open valve.

Sunbeam moved for a summary judgment on the ground that the Townes's new claims were barred by the statute of limitations. Meanwhile, Manchester filed its answer to the Townes's amended complaint and, pursuant to Tenn.Code Ann. § 20–1–119 (1994), raised as a defense the comparative fault of its codefendants, including Sunbeam. Following a hearing on September 26, 1997, the trial court ruled from the bench that the Townes's new claims against Sunbeam were time-barred because they could not take advantage of the relation-back feature of Tenn.R.Civ.P. 15.03. The trial court also held that the Townes could not take advantage of Tenn. Code Ann. § 20–1–119 because Sunbeam was not an unknown party when the Townes filed their second amended complaint.[4]

On October 3, 1997, the Townes requested permission to file their third amended complaint. In addition to striking their claim for punitive damages and all their claims against Manchester except for strict liability, the Townes again undertook to add Sunbeam as a defendant in accordance with Tenn.Code Ann. § 20–1–119. In support of their motion, they pointed out that Sunbeam was no longer a party to the litigation in light of the trial court's dismissal of the claims against Sunbeam in their second amended complaint. In an order filed on October 29, 1997, the trial court denied the Townes's motion to amend, as it pertained to the Sunbeam claims.

The Townes are now appealing from the dismissal of the Sunbeam claims in their second and third amended complaints. First, they assert that these claims are not barred by the statute of limitations because they relate back to their first timely-filed complaint in accordance with Tenn. R.Civ.P. 15.03. Second, they assert that Tenn.Code Ann. § 20–1–119 permits them to add Sunbeam as a defendant because Manchester had alleged in its answer to the second amended complaint that Sunbeam was one of the parties who caused or contributed to the Townes's injuries.

## I.

### RELATION-BACK UNDER TENN.R.CIV.P. 15.03

■ We turn first to the Townes's claim that they should be permitted to rely on the relation-back provisions in Tenn. R.Civ.P. 15.03 to save their new claims against Sunbeam from the fatal operation of the statute of limitations. The trial court held that the Townes could not take advantage of Tenn.R.Civ.P. 15.03 because they had been delinquent in discovering Sunbeam's connection with the manufacturing of the propane tank. While we have concluded that delinquency in discovery is not an appropriate consideration with regard to the application of Tenn. R.Civ.P. 15.03, we have determined that the rule does not apply in this case because the Townes have not met the rule's "mistake or misnomer" requirement.[5]

■ The courts should construe Tenn. R.Civ.P. 15.03 liberally to promote the consideration of claims on their merits. *Floyd v. Rentrop*, 675 S.W.2d 165, 168 (Tenn.1984); *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 794 (Tenn.Ct.App.1997). However, Tenn. R.Civ.P. 15.03 should not be used to

---

**4.** The order embodying the trial court's rulings during the September 26, 1997 hearing was filed on October 17, 1997.

**5.** An appellate court may affirm a trial court's decision that reaches a correct result even if the appellate court does not agree with the trial court's reasoning. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn.1986); *Hutcherson v. Criner*, 11 S.W.3d 126, 136 (Tenn.Ct.App.1999).

breathe life into claims that are plainly time-barred. *Turner v. Aldor Co. of Nashville, Inc.,* 827 S.W.2d 318, 321–22 (Tenn.Ct.App.1991).

■ The purpose of Tenn.R.Civ.P. 15.03 is to enable parties to correct the "mislabeling of a party they intended to sue," *Grantham v. Jackson–Madison County Gen. Hosp. Dist.,* 954 S.W.2d 36, 38 (Tenn. 1997), not to add a new party who was simply overlooked. *Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment,* 821 S.W.2d 938, 941 (Tenn.Ct. App.1991); *Smith v. Southeastern Props., Ltd.,* 776 S.W.2d 106, 109 (Tenn.Ct.App. 1989). Thus, the rule does not apply when a plaintiff seeks to amend its complaint to add a defendant that it previously nonsuited. *Bennett v. Town & Country Ford, Inc.,* 816 S.W.2d 52, 54 (Tenn.Ct.App. 1991).

The outcome of this issue is controlled by the *Bennett v. Town & Country Ford, Inc.* decision. The Townes originally sued Sunbeam but later freely and voluntarily nonsuited the company. Their attempt to reinstitute their claims against Sunbeam got its impetus, not from any mistake that the Townes made regarding Sunbeam's name or identity, but rather from their later realization that they might have other claims against Sunbeam that had not been included in their original complaint. The relation-back feature of Tenn.R.Civ.P. 15.03 does not permit a plaintiff to renew its suit against a defendant after the plaintiff has voluntarily dismissed its original claims against the defendant in accordance with Tenn.R.Civ.P. 41.01.

## II.

### AMENDMENTS PERMITTED BY TENN.CODE ANN. § 20–1–119

■ The Townes also assert that the trial court erred by refusing to permit them to amend their complaint pursuant to Tenn.Code Ann. § 20–1–119 to add Sunbeam as a defendant after Manchester's answer to their second amended complaint named Sunbeam as an entity who caused or contributed to their injuries. The trial court held that Tenn.Code Ann. § 20–1–119 did not apply because Sunbeam was not an "unknown entity" to the Townes when Manchester named Sunbeam as a comparative tortfeasor in its answer. We have determined that the trial court interpreted Tenn.Code Ann. § 20–1–119 too narrowly.

■ The Tennessee Supreme Court abolished the doctrine of joint and several liability when it superimposed its current comparative fault scheme on the traditional rules of contributory negligence. *McIntyre v. Balentine,* 833 S.W.2d 52, 58 (Tenn. 1992). Tenn.Code Ann. § 20–1–119 is the Tennessee General Assembly's response. *Brown v. Wal–Mart Disc. Cities,* 12 S.W.3d 785, 788 (Tenn.2000); *Browder v. Morris,* 975 S.W.2d 308, 312 (Tenn.1998). The statute is intended to provide an injured party with a fair opportunity to bring before the court all persons who caused or contributed to the party's injuries. In the words of the Tennessee Supreme Court, Tenn.Code Ann. § 20–1–119

> allows a plaintiff a limited time within which to amend a complaint to add as a defendant any person alleged by another defendant to have caused or contributed to the injury, even if the statute of limitations applicable to a plaintiff's cause of action against the added defendant has expired.

*Owens v. Truckstops of Am.,* 915 S.W.2d 420, 427 (Tenn.1996). In light of the statute's purpose and the *Owens* court's use of the phrase "any person," we have determined that it is remedial and should be construed liberally.

## III.

### TENN.CODE ANN. § 20–1–119 NOT RESTRICTED TO UNKNOWN COMPARATIVE TORTFEASORS

The trial court and Sunbeam assert that the Townes cannot take advantage of Tenn.Code Ann. § 20–1–119 because they were aware of Sunbeam when they filed their original complaint. This argument relies heavily on a decision by the United States Court of Appeals for the Sixth Circuit holding that Tenn.Code Ann. § 20–1–119 applies only to comparative tortfeasors unknown to the plaintiff until the filing of the defendant's answer. *Whittlesey v. Cole,* 142 F.3d 340, 345 (6th Cir.1998). At least one panel of this court has adopted the Sixth Circuit's construction of Tenn. Code Ann. § 20–1–119. *Lipscomb v. Doe,* No. 02A01–9711–CV–00293, 1998 WL 886601, at *3–4, 1998 WL 886601 (Tenn. Ct.App. Dec.16, 1998), *rev'd on other grounds,* 32 S.W.3d 840 (Tenn. 2000).

State law must be applied in diversity cases filed in federal court that do not involve a federal question. The federal courts look to the law of the state as declared by its highest court when they decide questions of state law. In the absence of an authoritative pronouncement by the state's highest court, the federal courts may either certify the state law question to the state's highest court for an authoritative interpretation, Tenn.S.Ct .R. 23; *Arizonans for Official English v. Arizona,* 520 U.S. 43, 76–78, 117 S.Ct. 1055, 1073–74, 137 L.Ed.2d 170 (1997), or ascertain and apply the state law as they understand it from available sources. *United States v. Anderson County,* 761 F.2d 1169, 1173 (6th Cir.1985); *Werthan Bag Corp. v. Agnew,* 202 F.2d 119, 124–25 (6th Cir. 1953). When a federal court undertakes to decide a state law question in the absence of authoritative state precedent, the state courts are not bound to follow the federal

court's decision. Thus, while we have utmost respect for the United States Court of Appeals for the Sixth Circuit, its interpretation and application of state law is not binding on this court. *See State ex rel. Elvis Presley Int'l Mem. Found. v. Crowell,* 733 S.W.2d 89, 97 (Tenn.Ct.App.1987) (declining to follow the United States Court of Appeals for the Sixth Circuit's construction of state property law).

By the same token, our colleagues' interpretation of Tenn.Code Ann. § 20–1–119 is not binding on us either. While we are hesitant to part company with our colleagues on questions of law, the *Lipscomb v. Doe* opinion is not "controlling authority" because it has not been reported in the official reporter. Tenn.S.Ct.R. 4(H)(2). In addition, we note that *Lipscomb v. Doe* has been reversed by the Tennessee Supreme Court. *Lipscomb v. Doe,* 32 S.W.3d 840 (Tenn.2000). While the majority of the court pretermitted construing Tenn. Code Ann. § 20–1–119, one justice concluded that the *Lipscomb v. Doe* court misconstrued the statute. *Lipscomb v. Doe,* 32 S.W.3d at 850–52 (Holder, J., concurring and dissenting). While the conclusions of a single justice are not necessarily harbingers of how the court may ultimately construe Tenn.Code Ann. § 20–1–119, they provide a basis for concluding that further examination of the issue is in order.

Tenn.Code Ann. § 20–1–119 makes no reference to a plaintiff's diligence in discovering the identity of potentially liable parties. The statute provides a plaintiff with a ninety-day window within which to assert a claim against a comparative tortfeasor as long as two conditions are met. The first condition is that one of the defendants must name the comparative tortfeasor as one who "caused or contributed to the injury or damage for which the

plaintiff seeks recovery." The second condition is that the named comparative tortfeasor is "not a party to the suit." In light of the plain language of Tenn.Code Ann. § 20–1–119, we conclude that a plaintiff's knowledge of the existence of other persons who might be liable for the plaintiff's injuries is irrelevant.[6]

In addition to the plain language of Tenn.Code Ann. § 20–1–119, there are two reasons for declining to follow the *Whittlesey v. Cole* and *Lipscomb v. Doe* decisions. First, they overlook a traditional aspect of trial strategy. Prior to *McIntyre v. Balentine*, plaintiffs retained complete discretion regarding their selection of defendants. They were not required to sue every person who might have caused or contributed to their injury because the doctrine of joint and several liability provided them a legal vehicle for obtaining a full recovery. The abolition of joint and several liability in 1992 shifted to the plaintiff the entire burden of discovering all the potential tortfeasors. It also greatly reduced a plaintiff's discretion regarding the choice of defendants because failing to name a potentially liable party increased the likelihood that the plaintiff would not be made whole. Thus, if anything, Tenn. Code Ann. § 20–1–119 simply preserves a plaintiff's prerogative to select defendants just as they were able to before *McIntyre v. Balentine* was decided.

The second reason for declining to follow the *Whittlesey v. Cole* and *Lipscomb v.*

*Doe* opinions is more pragmatic. Basing the application of Tenn.Code Ann. § 20–1–119 on what the plaintiff knew or should have known when the plaintiff filed its original complaint will require the courts to become embroiled in cumbersome and difficult inquiries having little to do with the parties' fault. The newly added defendant, as the moving party, will have the burden of proving what the plaintiff knew or should have known when it filed its complaint. As a practical matter, this evidence can come only from the plaintiff and the plaintiff's lawyer. Thus, pursuing this inquiry will inevitably ensnarl the courts in difficult questions of lawyer-client privilege, attorney work product, and perhaps legal competence. None of these inquiries were relevant before *McIntyre v. Balentine* was decided, and they should remain irrelevant today.

## IV.

### WHEN TO DETERMINE SUNBEAM'S STATUS AS A PARTY

■ Sunbeam also asserts that the Townes cannot take advantage of Tenn. Code Ann. § 20–1–119 because it became a party to the action after the Townes filed their second amended complaint. Because Tenn.Code Ann. § 20–1–119, by its own terms, applies only to added defendants who are "not a party to the suit," Sunbeam's argument requires us to decide

---

6. The text of Tenn.Code Ann. § 20–1–119 is so clear that we need not consult its legislative history to ascertain the General Assembly's intent. However, the transcripts of the legislators' discussions regarding this statute in committee and on both the House and Senate floor point to the probable source of the notion that the statute is limited to defendants unknown to the plaintiff when it filed its original complaint. When the bill's sponsors explained how the bill worked, they used examples featuring "phantom" or "unknown"

defendants. However, these examples were simply explanations of the most common circumstance when the proposed statute could be invoked, and, when taken in context, were not intended to limit the bill's application. Even if they had been, the statements of a bill's sponsors cannot alter the plain meaning of a statute. *D. Canale & Co. v. Celauro*, 765 S.W.2d 736, 738 (Tenn.1989); *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d 663, 674 (Tenn.Ct.App.1997).

when the determination of an added defendant's status must be made.

We have already concluded that Tenn. Code Ann. § 20–1–119 should be construed liberally to enable plaintiffs to have their claims adjudicated on the merits. Consistent with this construction, we have concluded that an added defendant's status as a party should be determined, not when the original defendant names the added defendant as an additional comparative tortfeasor in its answer or amended answer, but rather when the plaintiff either seeks to amend its complaint to name the additional comparative tortfeasor as an additional defendant or to file a separate complaint against the additional comparative tortfeasor.

The Townes originally attempted to bring Sunbeam back into the case when they filed their second amended complaint. Sunbeam actually became a party to the case in June 1997 when the trial court permitted the Townes to file this amended complaint. After Sunbeam asserted its statute of limitations defense, the Townes argued that their new claim against Sunbeam was not time-barred either because it related back to their original complaint under Tenn.R.Civ.P. 15.03 or because they filed it within ninety days after Manchester answered their second amended complaint. There is no question that Sunbeam was a party to the case when the Townes first invoked Tenn.Code Ann. § 20–1–119. Accordingly, the trial court correctly determined at the September 26, 1997 hearing that the Townes could not take advantage of Tenn.Code Ann. § 20–1–119.

However, Sunbeam's status changed as a result of the trial court's decision at the September 26, 1997 hearing. Because the Townes could not take advantage of the relation-back features of Tenn.R.Civ.P. 15.03, their claims against Sunbeam were dismissed because they were time-barred.

Since the Townes's claims against Sunbeam had been dismissed, Sunbeam was no longer a party when the Townes moved to file their third amended complaint on October 3, 1997. In this circumstance, the application of Tenn.Code Ann. § 20–1–119 hinged on whether the Townes had sought to amend their complaint to add new claims against Sunbeam within ninety (90) days after Manchester identified Sunbeam as a party who caused or contributed to the Townes's damages. Manchester's answer to the Townes's second amended complaint was filed on September 4, 1997, and thus the Townes's third amended complaint, filed approximately one month later, was well within the ninety-day period required by Tenn.Code Ann. § 20–1–119(a). Accordingly, the trial court erred by denying the Townes's motion to file their third amended complaint naming Sunbeam as a party to this action.

### V.

We affirm the October 17, 1997 order dismissing the Townes's new claims against Sunbeam. However, we reverse the October 29, 1997 order denying the Townes's motion to file their third amended complaint asserting claims against Sunbeam in accordance with Tenn.Code Ann. § 20–1–119. We remand the case to the trial court for further proceedings consistent with this opinion and tax the costs of this appeal to the Sunbeam Oster Company, Inc. for which execution, if necessary, may issue.