# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 8, 2013 Session

## MELISSA BROOKE HALEY, ET AL. v. STATE OF TENNESSEE

**Appeal from the Claims Commission for Davidson County**
**No. T20120071      William O. Shults, Commissioner**

_____

**No. E2012-02484-COA-R3-CV-FILED-SEPTEMBER 25, 2013**

_____

This is a medical malpractice case.[1]  The plaintiff filed a claim with the Division of Claims Administration, as the resident physician alleged to have engaged in negligence was purportedly connected to a University of Tennessee training program at Erlanger Hospital in Chattanooga, Tennessee.  The State moved the Commissioner to dismiss the plaintiff's action for failure to comply with the requirements set out in Tennessee Code Annotated section 29-26-121(a).  The Commissioner reluctantly agreed with the State's position.  We hold that the plaintiff complied with section 121(a)'s notice requirement by complying with the claim notice requirements of Tennessee Code Annotated section 9-8-402.  We further hold that section 121 does not mandate dismissal with prejudice for noncompliance with its terms, and that the plaintiff's failure to provide all the items denoted in section 121(a) does not warrant dismissal with prejudice under the facts of this case.  We vacate the dismissal order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

---

[1]Tennessee Code Annotated section 29-26-101 now defines most all cases occurring in a medical context as "health care liability actions."  The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based . . . ."  *See* Acts 2011, ch.  510, § 8.  Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code.  *See* Acts 2012, ch.  798.  The provisions of the revised statute do not apply to this action, as the injuries at issue here accrued before October 1, 2011.

Olen G. Haynes, Sr., Johnson City, Tennessee, for the appellants, Melissa Brooke Haley, personally and for the use and benefit of her daughter, Starla Brooke Joanne Haley.

Joshua R. Walker, Associate General Counsel, The University of Tennessee, Knoxville, Tennessee, for the appellee, State of Tennessee.

**OPINION**

**I. BACKGROUND**

Counsel for plaintiff, Melissa Brooke Haley, filed a "notice of claim," dated July 15, 2011, with the Division of Claims Administration ("DCA") on July 18, 2011, pursuant to Tennessee Code Annotated section 9-8-402(a), which requires:

> (a)(1)  The claimant must give written notice of the claimant's claim to the division of claims administration as a condition precedent to recovery . . . .
>
> (2) The notice shall state the circumstances upon which the claim is based, including, but not limited to: the state department, board, institution, agency, commission or other state entity that allegedly caused the injury; the time and place of the incident from which the claim arises; and the nature of the claimant's injury.

The record reveals that the alleged negligent treatment by a resident physician purportedly connected to a State entity occurred on July 17, 2010.  At that time, the relevant statute regarding medical malpractice, Tennessee Code Annotated section 29-26-121(a), provided as follows regarding notice:

> (1)  Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.
>
> (2)  The notice shall include:
>
>> (A) The full name and date of birth of the patient whose treatment is at issue;

-2-

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

The notice of claim sent to the DCA by counsel for Ms. Haley was printed on the firm's letterhead and specifically reads as follows:

RE: Melissa Brooke Haley, personally and for use and benefit of her daughter, Starla Brooke Joanne Haley

Dear Sir or Madam:

Please allow this letter to serve as notice of claim against the State of Tennessee in accordance with T.C.A. § 9-8-402. Plaintiff, Melissa Brooke Haley, is the mother of Starla Brooke Joanne Haley who was born in Chattanooga, Tennessee, on July 17, 2010. Plaintiff and her daughter are residents of Georgia residing at 1619 Burnt Oak Drive, Dalton, Georgia 30721. Plaintiff, Melissa Brooke Haley, became an obstetrical patient of the Regional Obstetrical Consultants in Chattanooga, Tennessee, because of concerns that her primary care OB/GYN in Dalton, Georgia, had related to a 2-vessel cord and polyhydramnios. At approximately 32 weeks, a routine office ultrasound revealed a change in the fetal bowel suggestive of an obstructive process "likely a meconium ileus." At 36 weeks, it was noted by the OB that the fetal bowel loops had continued to enlarge resulting in increased abdominal circumference. An office note revealed that "[t]he AC today measures 40 cm which is well out of the normal range. This is approximately 8 cm (or 25%) bigger than the head circumference. We had originally discussed labor induction for [Ms. Haley] around 38 weeks. I am concerned that this abdominal circumference will not pass through the maternal pelvis."

Plaintiff was then informed and assured that delivery would be accomplished by cesarean section. Plaintiff was further advised that, as a precaution, delivery should take place at the Erlanger Hospital in Chattanooga, Tennessee, where the staff would be appropriately informed and prepared to deliver by c-section.[2]

Plaintiff, however, went into labor at 38 weeks and was brought to Erlanger Hospital for delivery. A resident physician, Dr. Valerie Parker, performed delivery of Starla Brooke Joanne Haley vaginally rather than by c-section as had previously been ordered by Plaintiff's attending OB/GYN. The increased stresses of the vaginal delivery likely resulted in a mid-gut volvulus necessitating immediate surgical intervention to repair. Inexplicably, the surgery was delayed until the following day on July 18, 2010, by which time the mid-gut volvulus had created a loss of blood supply to the bowel with resultant necrosis. The necrotic bowel was described by the surgeon after the exploratory laparotomy as an "intra-abdominal catastrophe."

Plaintiff, Melissa Brooke Haley, personally and for the use and benefit of her daughter, Starla Brooke Joanne Haley, would show that the resident, Dr. Valerie Parker, deviated from the acceptable standard of medical care owed the Plaintiff in Chattanooga, Tennessee, as follows:

    1. By failing to obtain Ms. Haley's medical history before performing the vaginal delivery; and

    2. Failure to perform a cesarean section.

Plaintiff would show that, as a result of the negligence of the resident, Starla Brooke Joanne Haley has experienced, and is expected to continue to experience, bowel complications. Plaintiff would also show that Starla Brooke Joanne Haley has a permanent medical complication that was proximately and directly caused by the negligence of the resident in performing a vaginal delivery.

Wherefore, Plaintiff, Melissa Brooke Haley, demands judgment against the State of Tennessee in the amount of $300,000.00.

Wherefore, Plaintiff, for the use and benefit of her minor daughter, Starla

---

[2]The University of Tennessee operates a training program at the hospital.

-4-

Brooke Joanne Haley, demands judgment against the State of Tennessee in the amount of $300,000.00.

Please advise if you believe if this notice fails in any way to meet the conditions of T.C.A. § 9-8-402, or if you believe that another entity other than the State of Tennessee is responsible for the injuries complained of herein. . . .

This notice to the State complies with Tennessee Code Annotated section 9-8-402. Reviewing the notice through the filter of Tennessee Code Annotated section 29-26-121(a)(2) requirements, it contains the full name of the child and her birth date, the full name of Ms. Haley, the address of Ms. Haley and her daughter, the names of certain providers, and the name and address of the attorney sending the notice. The notice did not include Ms. Haley's birth date, a list of the name and address of all providers being sent a notice, or HIPAA compliant medical authorizations.

On October 17, 2011, counsel for Ms. Haley received a notice from the DCA that it "has been unable to act on your claim within ninety (90) days and is transferring your claim to the Claims Commission pursuant to Tennessee Code Annotated, Section 9-8-402(c)," which provides as follows:

The division of claims administration shall investigate every claim and shall make every effort to honor or deny each claim within ninety (90) days of receipt of the notice. If the claim is denied, the division shall so notify the claimant and inform the claimant of the reasons therefor and of the claimant's right to file a claim with the claims commission within ninety (90) days of the date of the denial notice. If the claim is honored and the damages may be ascertained within the ninety-day settlement period, the division shall so notify the claimant, and inform the claimant of the conditions of the settlement offer, and of the claimant's right to file such claimant's claim with the claims commission within ninety (90) days of the date of the settlement notice if the conditions of the settlement offer are unacceptable. If the claim is honored and the amount of damages may not be ascertained within the ninety-day settlement period because evidence of loss will be obtained after the ninetieth day of the settlement period, the division shall so notify the claimant and inform the claimant of the claimant's right to file a claim with the claims commission within ninety (90) days of the date the division forwards final compensation to the claimant or upon written request for transfer to the commission by the claimant; provided, that final compensation shall be forwarded to the claimant within one (1) year of the date of the settlement

-5-

notice. If the division fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission.

Ms. Haley thereafter filed a "complaint" with the Claims Commission on November 9, 2011, as required by Rule 0310-1-.01(2)(d)3 of the Rules of the Tennessee Claims Commission:

> When DCA has transferred a claim to the Claims Commission . . . [w]ithin thirty (30) days of the receipt of the notification of assignment of a Commissioner, the claimant shall file a complaint (which complies with TRCP 8 and 10). If such a complaint has already been filed with the Division of Claims Administration, then this requirement is satisfied.

In regard to the complaint, the applicable version of Tennessee Code Annotated section 29-26-121(b) provided that

> [i]f a complaint is filed in any court alleging a claim for medical malpractice, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

In the "complaint" filed with the Claims Commission, counsel for Ms. Haley indicated that "Claimant has complied with the provision of T.C.A. § 29-26-121(a) by attaching hereto a Certificate of Good Faith as Exhibit A." Counsel indeed attached a Certificate of Good Faith in compliance with section 29-26-122[3] – not section 121(a). According to the record, counsel did not attach the notice sent to the DCA or otherwise address the items required in section

---

[3]The applicable version of section 29-26-122 denoted:

(a) In any medical malpractice action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause. . . .

* * *

(c) The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice. . . .

121(a)(2).

The State thereafter moved to dismiss the action with prejudice for the following reasons:

1. Claimant failed to provide pre-suit notice as required by Tennessee Code Annotated section 29-26-121 before filing her written notice of claim with the Division of Claims Administration;

2. Claimant failed to attach a certificate of good faith to her written notice of claim filed with the Division of Claims Administration as required by Tennessee Code Annotated section 29-26-122; and

3. At this time, Defendant has not been able to determine whether Valerie Parker, M.D., against whom Claimant alleges fault on behalf of the State, was acting as a State agent and/or employee or acting in some other capacity or for personal gain regarding the events complained of. In the event Dr. Parker was not acting as a State agent and/or employee or was acting for personal gain, this claim is not properly before the Commission, and a motion to dismiss for lack of subject matter jurisdiction will be made. . . .

Eight months later, on September 17, 2012, the Commissioner granted the State's motion to dismiss. In pertinent part, the order holds as follows:

This is a medical malpractice action which raises interesting questions as the parties attempt to navigate their way between the requirements of the Claims Commission Act, Tenn. Code Ann. § 9-8-301, et. seq. and those of the Medical Malpractice Act, Tenn. Code Ann. § 29-26-101, et. seq. In particular, at issue here is the interplay between the requirements for initiating a case under Tenn. Code Ann. §§ 9-8-402 and 403 and Claims Commission Rule 0310-01-01-.01(2) as well as Tenn. Code Ann. §§ 29-26-121 and 122.

\* \* \*

The State in its Motion argues that the pre-suit notice and certificate of good faith requirements found in the Medical Malpractice Act are applicable to claims filed against the State in this Commission. The State contends that the . . . Court of Appeals made this clear in *Cunningham v. Williamson County Hosp. District*, No. M2011-00554-COA-R9-CV, 2011 WL 6000379 (Tenn. Ct. App.) (perm. app. granted April 11, 2012) which held . . . that the Tennessee

Civil Justice Act of 2011 made it clear that the Medical Malpractice Act applies to both the State and its political subdivisions. The 2011 legislation had an effective date of October 1, 2011.

However, the Tennessee Supreme Court granted an application for permission to appeal on April 11, 2012, in *Cunningham* and resolution of the issues raised in that appeal awaits the conclusion of the briefing process, oral argument, and the High Court's opinion.

The State argues that in the Claims Commission, the initiating document is the Notice of Claim provided for in Tenn. Code Ann. § 9-8-402 and that, consequently Ms. Haley should have served a Written Notice of Claim on the State pursuant to Tenn. Code Ann. § 29-20-121 at least 60 days before filing the Notice she sent to the DCA on July 15, 2011. The State also argues that according to Claims Commission Rule 0310-01-01-.01(2), Rule 3 of the Tennessee Rules of Civil Procedure does not apply in the Commission and therefore, any purported pre-suit notice given 60 days or more before Ms. Haley actually filed her Complaint following the transfer of the claim from the DCA to the Commission came too late. Further, the State argues that the Certificate of Good Faith required by Tenn. Code Ann. § 29-26-122 likewise should have been filed with the original Notice of Claim since that Notice was the initiating document in this case.

The State also argues that the informational requirements mandated by the 2009 amendments to the Medical Malpractice Act, in Tenn. Code Ann. § 29-26-121, were incomplete here and, in particular, the requirements that plaintiff list the names and addresses of all medical providers to which she sent notice and that she provide a HIP[A]A compliant medical authorization form permitting persons or entities receiving notice to obtain copies of the plaintiffs' medical records.

\* \* \*

The claimant, in her Response, argues that the Claims Commission Act contains its own notice requirement in Tenn. Code Ann. § 9-8-402 with which she has complied. Consequently, Ms. Haley argues that any conflict between the Claims Commission Act and the Medical Malpractice Act must be resolved in her favor since actions before the Claims Commission are sui generis and she has proceeded accordingly. Ms. Haley contends that the State's position that the initiating document is the written Notice of Claim triggering a

requirement for a Tenn. Code Ann. § 29-26-121 notice is actually contrary to the requirements of Tenn. Code Ann. § 9-8-402. However, claimant goes on to argue that if the Commission were to find in fact that the original Notice of Claim filed with DCA was the initiating filing there then compliance with the pre-suit notice requirement found in Tenn. Code Ann. § 29-26-121(a)(1) and (2) should be excused for "extraordinary cause" as provided for in Tenn. Code Ann. § 29-26-121(c). . . .

* * * *

Since the alleged malpractice here occurred on July[]17, 2010, the versions of Tenn. Code Ann. §§ 29-26-121 and 122 in effect after the 2008 and 2009 amendments must be applied . . . .

* * *

The Commission finds that the General Assembly's intent, beginning with the amendments to the Medical Malpractice Act in 2008, appears to have been to implement a system whereby potential claimants would give advance notice to potential defendants . . . of a possible medical malpractice claim and then afford those parties at least 60 days within which to analyze and perhaps resolve the allegations before the laborious, expensive, and emotionally draining task of litigating a complex medical malpractice action commences. . . .

* * *

A logical argument can be made that the approach behind the 2008, 2009, 2011, and the 2012 amendments to the Tennessee Medical Malpractice [Act] were presaged by what the General Assembly did in 1984 with the enactment of the Tennessee Claims Commission Act. . . .

Indeed, the Claims Commission Act goes on to provide, in Tenn. Code Ann. § 9-8-402(c), that the State through the Division of Claims Administration has a 90 day opportunity, following that notice, to ". . . investigate every claim and . . . make every effort [to honor] or deny each claim . . ." before the claim is automatically transferred to the Clerk of this Commission. . . .

Thus, both the Tennessee Claims Commission Act and the Medical Malpractice Act contain provisions evidencing a clear intention that parties to

-9-

medical malpractice cases should be afforded a reasonable and fair opportunity to investigate and perhaps resolve the matter, one way or the other, before litigation is instituted.

*The State makes much of the following language from Commission Rule 0310-01-01-.01(2): "TRCP Rule 3 is not followed." The State appears to argue that a "complaint" is not the starting point in a claim filed with the Commission. That is clearly not the case. Later language found in the Rule makes it clear that in a situation such as found in this case, a Complaint compliant with Tenn. R. Civ. P. Rules 8 and 10, must be filed after a claim is transferred to the Commission from the DCA where it was unable to be resolved. Prior to that there is no claim before the Commission.*

*In this case, what happened with Ms. Haley's filing of her notice letter with DCA on July 15, 2011 is perfectly consistent with the requirements of Tenn. Code Ann. § 29-26-121. In fact, Ms. Haley gave notice some 117 days before her lawsuit was filed on November 9, 2011.*

We are required to construe the Act which governs this Commission in pari materia with the Medical Malpractice Act. Viewing those two acts together . . . leads us to conclude that the timeliness of Ms. Haley's initial notice here is unquestionable and reflects the legislature's intent to be fair with legitimately damaged claimants as well as providers faced with allegations that they acted incompetently in treating a patient.

There was clearly confusion prior to June 16, 2011, as to whether the 2008 and 2009 amendments to the Medical Malpractice Act (including Tenn. Code Ann. §§ 29-26-121 and 122) applied to allegations of medical malpractice involving the State or its political subdivisions. However, the Tennessee Civil Justice Act of 2011, in Public Chapter 510, effective for actions accruing on or after October 1, 2011, now makes it clear that in fact those amendments do apply to cases involving the State with the exception of any conflict with "the provisions of Tennessee Claims Commission Act compiled in title 9, chapter 8, part 3." *See Cunningham v. Williamson County Hospital Dist., et al*, M2011-00554-COA-R9-CV, 2011 WL 6000379, at *6, fn 12 (Tenn. Ct. App.). The Complaint here was filed after the effective date November 9, 2011.

Clearly, therefore we have two statutes governing how medical malpractice actions against the State must be handled. However, there are slight variations

in the timing requirements under each act. This Commission takes very seriously the well-established rule of statutory construction directing that we avoid "[a] construction which places one statute in conflict with another . . . [and that we] resolve any possible conflict in favor of each other so as to provide a harmonious operation of the laws." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (quoting *Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn. 1995)). In analyzing the case before us, we are attempting to do exactly that.

The State argues quite ably as well as forcefully that Ms. Haley should have sent her pre-suit notice at least 60 days <u>before</u> July 15, 2011, when she submitted her notice letter to the Division of Claims Administration as required by Tenn. Code Ann. § 9-8-402(a). *This notice was timely under the provisions of Tenn. Code Ann. § 9-8-402(b) and met the informational requirements set out in that section and in fact, contained <u>almost all</u> of the information required by Tenn. Code Ann. §§ 29-26-121(a)(2)(A), (B), (C).*

Under the State's theory the notice required by Tenn. Code Ann. § 29-26-121 should have been sent to it no sooner than 60 days prior to July 15, 2011, the date Ms. Haley mailed her notice letter to the DCA. What the State is arguing for here, and in several other pending cases, is that in medical malpractice cases filed in the Claims Commission claimants are required to send the State what amounts to a sort of "pre-notice notice" when the provisions of Tenn. Code Ann. §§ 9-8-402 and 29-26-121 are construed together. Under the State's theory the Tenn. Code Ann. § 29-26-121 notice must be served at least 60 days before suit is filed in a trial court but in the Commission, that same notice must be sent 60 days before the notice required by Tenn. Code Ann. § 9-8-402 is delivered to the DCA even though Commission Rule 0310-01-01-.01(3) explicitly states that the commencement of an action <u>in this Commission</u> is begun with the filing of a Complaint within 30 days after it leaves the jurisdiction of the DCA and the claimant is advised by the Clerk that it has been transferred and a Commissioner assigned. It is only with the filing of that Complaint that a claim first comes within the jurisdiction of this Commission.

We do not find that such a strained interpretation of these governing statutes is called for in this case. As discussed above, the clear philosophy behind both the Tennessee Claims Commission and the Medical Malpractice Acts is to give the parties at least 60 days, and in the case of this Commission at least 90 days . . . .

In this case, the claimant timely delivered her pre-suit notice to the State as

-11-

required by Tenn. Code Ann. § 9-8-402 on July 15, 2011, and then some 94 days later, on October 17, 2011, pursuant to Tenn. Code Ann. § 9-8-402(c) the matter was transferred from the Division to the Clerk of the Commission and the parties so advised.

(Emphasis in italics added.). Despite finding Ms. Haley's notice to be timely, however, the Commissioner concluded that the claim must be dismissed because Ms. Haley had not provided a list of the names and addresses of all providers who were sent pre-suit notice and a HIPAA-compliant medical authorization as required by Tennessee Code Annotated sections 29-26-121(a)(2)(D) and (E). After the Commissioner denied motions to alter or amend submitted by both parties, Ms. Haley filed this appeal.

## II. ISSUE

The question presented by this appeal is whether Ms. Haley's filing in the Claims Commission pursuant to Tennessee Code Annotated section 9-8-402 was effective compliance with Tennessee Code Annotated section 29-26-121.

## III. STANDARD OF REVIEW

The Commissioner's grant of the State's motion to dismiss involves a question of law. Our review, therefore, is de novo with no presumption of correctness as to the trial court's legal conclusions. *Myers v. Amisub (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

This action presents a matter of statutory interpretation, which is reviewable as a matter of law pursuant to the de novo standard without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The primary objective of statutory interpretation is to carry out the legislative intent without broadening or restricting a statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). We also presume that the General Assembly was aware of the state of the law when the statutes were enacted and that it did not intend to enact a useless statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010).

# IV. DISCUSSION

We have previously applied medical malpractice statutes to a claim in the Commission. *See McConkey v. State*, 128 S.W.3d 656, 659 (Tenn. Ct. App. 2003). In *Cunningham v. Williamson County Hospital District*, No. M2011-00554-COA-R9-CV, 2011 WL 6000379 (Tenn. Ct. App. Nov. 30, 2011) rev'd in part by *Cunningham v. Williamson County Hospital District*, ___ S.W.3d ___, No. M2011-00554-SC-S09-CV, 2013 WL 1912611 (Tenn. May 9, 2013),[4] we addressed the question of the medical malpractice amendments to a claim against a county under the Governmental Tort Liability Act ("GTLA"). We held that "it was the express intent of the General Assembly that the 2008 and 2009 amendments shall apply to all medical malpractice actions including claims filed under the Governmental Tort Liability Act." *Cunningham*, 2011 WL 6000379 at *4. This is evident from the stated purpose in both the 2008 Public Act, which stated that the amendments "shall apply to all actions filed on or after [July 1, 2008], the public welfare requiring it," and the 2009 Public Act, which stated that Tennessee Code Annotated 29-26-121 "shall take effect and apply to notice given on or after July 1, 2009, in all medical malpractice actions. . . ." *See* 2008 Pub. Acts 919, § 3; 2009 Pub. Acts 474, § 4. In our view, logic dictates that if these amendments apply to claims against political subdivisions of the State under the GTLA, then the amendments apply to claims against the State itself.

The Supreme Court, in its review of our *Cunningham* decision, observed that application of other statutes in GTLA cases must "not conflict with specific provisions of the GTLA, its structure, purpose, or intent." *Cunningham*, 2013 WL 1912611, at *3 (citing *Lucius v. City of Memphis*, 925 S.W.2d 522, 526 (Tenn. 1996)). We find this language instructive. In that the amendment provisions before us do not conflict with the statutes and rules of the Claims Commission, we find that sections 29-26-121 and 122 of the Code apply to claims against the State. Accordingly, Ms. Haley was required to comply with the 2008 and 2009 amendments to the medical malpractice statutes demanding pre-suit notice at least 60 days before the claim is commenced and a certificate of good faith filed with the commencement. We further find no conflict with a plaintiff providing notice in accordance with Tennessee Code Annotated section 29-26-121 simultaneously to the notice pursuant to

---

[4]The Supreme Court observed in *Cunningham* that "[n]either party has addressed the issue of the applicability of the sixty-day notice requirement in cases governed by the GTLA," that the plaintiffs in that action "presume[d] that the sixty-day notice is required in GTLA cases," but that "we have not previously addressed whether the sixty-day pre-suit notice is required in GTLA cases." *Cunningham*, 2013 WL 1912611 at *4 and n. 3. The Court reversed our decision in part by holding that Tennessee Code Annotated section 29-26-121(c) does not apply to a health care liability case brought under the GTLA. *Id.* at *5.

Tennessee Code Annotated section 9-8-402.[5]

In regard to the sufficiency of notice required, Ms. Haley argues in the instant case that the only provider who is a "named defendant" in the Claims Commission is the State. She asserts that in cases filed in the circuit courts claiming medical malpractice against only one health care provider, sections 29-26-121(a)(2)(D) and (E) do not require either a list of providers or HIPAA compliant authorizations. Ms. Haley claims that as to the case filed in the Claims Commission, no list nor HIPAA authorization would be required as no other health care provider is a "named defendant" in that action. She contends that since the Commissioner's decision was based upon the assumption that application of Tennessee Code Annotated section 29-26-121 would have caused her to provide the State with a list of providers and HIPAA authorizations, and that her failure to do so rendered her notice letter deficient, the decision to dismiss was error.[6]

Ms. Haley also contends that because *Cunningham* was released by us after she commenced her claim in July 2011, she had no indication that the specific notice requirements of Tennessee Code Annotated section 29-26-121(a)(2) would apply in a case in the Claims Commission.

The State asks us to take judicial notice of the fact that in addition to this matter in the Claims Commission, Ms. Haley filed a circuit court action in Hamilton County against Regional Obstetrical Consultants, P.C., University Surgical Associates, P.C., Carlos Torres, M.D., Shawn P. Stallings, M.D., Lisa Ann Smith, M.D., and Chattanooga/Hamilton County Hospital Authority d/b/a Erlanger Health System. The State therefore asserts that the University of Tennessee was not the only medical provider and it was entitled to receive a list of these providers and a HIPAA-compliant release enabling it to acquire their records pre-suit.

The State additionally responds that this court in *Cunningham* relied on earlier decisions released in November 2010 - before Ms. Haley filed her claim. In *Brandon v. Williamson Medical Center*, 343 S.W.784, 786 (Tenn. Ct. App. 2010), we affirmed the

---

[5]Ms. Haley observes a potential conflict exists if a plaintiff were to send the section 29-26-121 notice at the same time as the 9-8-402 notice because of an approaching statute of limitations, and should the DCA transfer the case to the Claims Commission within 10 days of receipt, for example, a plaintiff would be forced to either (1) file the claim in violation of the Commission Rule 0310-1-1-.01(2)(3) 30-day filing requirement or (2) file the claim in violation of the section 29-26-121 60-day waiting requirement.

[6]The State acknowledges that the notice of claim with the DCA acts as service of process on the State in the Claims Commission. Tenn. Comp. R. & Regs. 0310-01-01-.01(2) and -.01(3).

-14-

dismissal of an action against a governmental entity for the failure of the plaintiff to provide a certificate of good faith. In *Martins v. Williamson Medical Center,* No. M2010-00258-COA-R3-CV, 2010 WL 4746238, at *1 (Tenn. Ct. App. Nov. 22, 2010), we affirmed the dismissal of a claim against the governmental entity for failure of the plaintiff to comply with both sections 121 and 122. Thus, we had applied the amendments to governmental entities prior to the filing of this claim with the DCA.

We observe, however, in *Lawing v. Greene County EMS*, No. E2011-01201-COA-R9-CV, 2012 WL 6562155, at *3 (Tenn. Ct. App. Dec. 17, 2012), this court held "the notice provisions contained in Tenn. Code Ann. § 29-26-121" do not apply to an action against a governmental entity. We therefore acknowledge that the application of the amendments to a Commission action, a matter the legislature did not specifically address and upon which the appellate courts have not spoken, could result in confusion.

In *Myers*, the Tennessee Supreme Court held that "the statutory requirements that a plaintiff give sixty days pre-suit notice and file a certificate of good faith with the complaint are mandatory requirements and not subject to substantial compliance." 382 S.W.3d at 304. In this case, Ms. Haley provided the State more than sixty days notice prior to filing the complaint with the Claims Commission in November 2011. She attached a Certificate of Good Faith with the complaint.

The *Myers* Court further related:

> Regarding Tennessee Code Annotated section 29-26-121, the legislature did not expressly provide for the consequence of dismissal with prejudice as it did in Tennessee Code Annotated section 29-26-122.

382 S.W.3d at 311-12. In *Foster v. Chiles*, No. E2012-01780-COA-R3-CV, 2013 WL 3306594 (Tenn. Ct. App. June 27, 2013), we discussed the significance of the *Myers* Court's observations:

> Although *Myers* found it unnecessary to explicitly address the consequence of noncompliance with section 121, the import of the Supreme Court's analysis seems clear. If the legislature intended to require the draconian remedy of dismissal with prejudice for noncompliance with section 121, then it would have said so, just as it did with respect to section 122, which was enacted at the same time and which addresses the same general subject matter. We conclude that section 121 does not require a court to dismiss a complaint with prejudice for noncompliance with the notice requirement of that section. This conclusion is in keeping with the general principle that "Tennessee law

strongly favors the resolution of all disputes on their merits." *Henley v. Cobb*, 916 S.W.2d 915, 916 (Tenn. 1996); *see also* **Hinkle v. Kindred Hosp., No. M2010-02499-COA-R3-CV, 2012 WL 3799215 at \*7, \* 15 (Tenn. Ct. App. M.S., filed Aug. 31, 2012)** (declining to **"conclude that any deviation from the strict letter of Tenn. Code Ann. § 29-26-121, no matter how small, would compel the courts to dismiss any medical malpractice claim asserted, no matter how meritorious"** and observing that **"[t]he hospital received actual notice. It seems to us that the technical requirements in the statute are intended to provide just that: notice of the claim.").** The language of section 121(b) providing that "[t]he court may require additional evidence of compliance to determine if the provisions of this section have been met" also supports the conclusion that automatic dismissal with prejudice is not required when a plaintiff neglects to attach proof of service to his or her complaint. In such an instance, the statute contemplates a hearing so the court may consider "additional evidence of compliance" rather than outright dismissal. Under the circumstances presented here, where plaintiffs provided sufficient notice under the statute and inadvertently failed to include . . . copies of the notice provided to the defendants, there is no reason why the court should not allow plaintiffs to rectify their oversight by filing the required proof late.

We are mindful of the fact that section 121(b) provides that "the pleadings . . . *shall* provide the documentation specified in subdivision (a)(2)." (Emphasis added.) We are also aware that the word "shall" in a statute often indicates a mandatory requirement, *see Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009), but this interpretation is not always required. The Supreme Court in *Myers*, noted that whether the word "shall" is interpreted to be mandatory or simply directory depends upon "whether the prescribed mode of action is of the essence of the thing to be accomplished." *Myers*, 382 S.W.3d at 309. Here "the essence of the thing to be accomplished" is the giving of the notice, not the attaching of evidence of same to the complaint. Under these circumstances, we hold that the provision in section 121(b) under discussion, is directory and not mandatory. Thus, the use of the word "shall" in section 121(b) is not inconsistent with our holding that dismissal is not required by the statute for noncompliance.

*Foster*, 2013 WL 3306594, at \*6-7.

We agree with the Commissioner that Ms. Haley complied with the notice requirements of Tennessee Code Annotated section 29-26-121(a). The statute does not

preclude proof by other means. The State had actual notice of the lawsuit months before the complaint was filed in the Claims Commission in November 2011 (accompanied by the filing of the Certificate of Good Faith). As noted in *Hinkle*,

> The defendants' argument elevates form over substance and conflates means with ends. The aim of Tenn. Code Ann. § 29-26-121 is to make sure that prospective defendants receive adequate and timely notice of possible claims against them. Similarly, the certificate of good faith requirement is designed to eliminate lawsuits where the claims have not been vetted by an expert.

> If we were to accept the defendants' argument at face value, we would be forced to conclude that any deviation from the strict letter of Tenn. Code Ann. § 29-26-121, no matter how small, would compel the courts to dismiss any medical malpractice claim asserted, no matter how meritorious. This would negate the strong preference of our law to resolve claims on their merits whenever possible. *See Henley v. Cobb*, 916 S.W.2d 915, 916 (Tenn. 1996); *Townes v. Sunbeam Oster Co., Inc.*, 50 S.W.3d 446, 450 (Tenn. Ct. App. 2001).

2012 WL 3799215, at *15. For the foregoing reasons we vacate the decision of the Claims Commission dismissing Ms. Haley's claim and remand this case for further proceedings, consistent with this opinion.

## V. CONCLUSION

The judgment of the Claims Commission is vacated and the case remanded. Costs on appeal are taxed to the appellee, State of Tennessee.

_____
JOHN W. McCLARTY, JUDGE